Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Patricia Sloan*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

|  |  |
|---|---|
| Patricia Sloan,<br><br>              Plaintiff,<br><br>       v.<br><br>Life Insurance Company of North America;<br>Trustee of the Group Insurance Trust for<br>Employers in the Services Industry; Trustee of the<br>Group Insurance Trust for Employers in the<br>Services Industry Disability Plan; Taipei<br>American School; Taipei American School<br>Foundation; Taipei American School Foundation<br>Disability Plan,<br><br>              Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Patricia Sloan (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

## *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2.      At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3.      Upon information and belief, Defendant Taipei American School (hereinafter referred to as the "Company") participated in an entity known as the Trustee of the Group Insurance Trust for Employers in the Service Industry (hereinafter referred to as the "Insurance Trust"), which sponsored, administered and purchased a group long-term disability insurance policy (hereinafter referred to as the "Policy") which was fully insured by Life Insurance Company of North America (hereinafter referred to as "LINA").  The specific group disability policy is known as Group Policy No.: 00716D.  Pursuant to an April 11, 2017 letter from LINA, Group Policy No. 00716D may have also been administered under Group Policy No. NHD 0911111.  The Company's purpose in participating in the Insurance Trust was to provide disability insurance for its employees.

4.      Upon information and belief, the Company is operated by an entity known as the Taipei American School Foundation (hereinafter referred to as the "Foundation").

5.      Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the Trustee of the Group Insurance Trust for Employers in the Services Industry Disability Plan/Taipei American School Foundation Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

6.      Upon information and belief, LINA functioned as the claim administrator of the Policy.  However, pursuant to the relevant ERISA regulation, the Company, Insurance

Trust, Foundation and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in LINA.

7.     LINA operated under a financial conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

8.     LINA's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her disability benefits.

9.     The Company, Insurance Trust, LINA, Foundation and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### Venue

10.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### Nature of the Complaint

11.    Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Plan, Insurance Trust, Foundation, any other Company Plan and/or the Company as a result of being found disabled in this action.

12.    After working for the Company as a loyal employee in the position of a Teacher, Plaintiff became disabled from working in any occupation on or about March 29, 2014, and has remained continuously disabled since that date due to serious medical conditions.

13.     Following the onset of her disability, Plaintiff filed a claim for long-term disability benefits under the relevant Policy which was administered by LINA.  LINA made every decision in Plaintiff's long-term disability claim.

14.     Upon information and belief, the relevant LINA Policy and definitions of disability governing Plaintiff's long-term disability claim are as follows:

> "You are considered Disabled if, solely because of Injury or Sickness, you are:
>
>   1. Unable to perform the material duties of your Regular Occupation; and
>   2. Unable to earn 80% or more of your Indexed Earnings from working in your Regular Occupation.
>
> After Disability Benefits have been paid for 24 months, you are considered Disabled if, solely due to Injury or Sickness, you are:
>
>   1. Unable to perform the material duties of any occupation for which you are, or may reasonable become, qualified based on education, training or experience; and
>   2. Unable to earn 60% or more of your Indexed Earnings."

15.     In support of her claim for long-term disability benefits, Plaintiff submitted to LINA medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

16.     LINA approved Plaintiff's long-term disability claim and paid her disability benefits for the 24 month "Regular Occupation" period, or through June 26, 2016. Following a review to determine whether Plaintiff met the "Any Occupation" definition of disability in the LTD Policy, LINA terminated Plaintiff's disability claim and benefits without any medical documentation to support its allegation that Plaintiff's medical conditions had improved in such a way that she could return to an occupation where she could earn at least 60% of her Indexed Earnings as defined in the Policy.

17.     In a letter dated December 23, 2015, LINA informed Plaintiff it was terminating her long-term disability benefits beyond June 26, 2016.

18.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed LINA's December 23, 2015 termination of her benefits and submitted additional medical, vocational and lay-witness evidence supporting her appeal and her allegation that she is disabled and meets any definition of disability in the Policy.

19.     Plaintiff submitted to LINA a July 1, 2016 narrative letter authored by her board certified treating physician who opined, "I have reviewed [LINA's] definition of disability from "any occupation" and believe since March 2014 [Plaintiff] has been unable to work in any occupation and will continue to be indefinitely."

20.     Further supporting her claim, Plaintiff submitted a July 1, 2016 medical questionnaire completed by the same board certified treating physician, who confirmed she would miss work "75% or more" of the time, due to her medical conditions, if she were employed in a full-time job.

21.     Plaintiff also submitted to LINA a Functional Capacity Evaluation report dated April 27, 2016, wherein after an extensive several hour evaluation, a qualified physical therapist concluded, "…[Plaintiff] would be physically unable to perform a job description at the **_sedentary work level_** on a full-time basis." (Original emphasis).

22.     Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated August 18, 2016, who after interviewing Plaintiff and reviewing the aforementioned evidence, along with the "Any Occupation" definition of disability set forth in the Policy concluded, "[Plaintiff] cannot earn 60% percent of her income as she is unable to work and she would not be able to perform a job in which she would earn at least 60% of her previous income because she is unable to sustain any gainful work."

23.     Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause and the impact they have on her ability to work in any occupation or in any work environment.

24.     Plaintiff also submitted to LINA three (3) sworn affidavits authored by herself, her husband and her daughter, who all confirmed she is unable to work in any occupation and that her conditions had not improved in any meaningful way since the date she originally became disabled.

25.     LINA entered into the Regulatory Settlement Agreement ("RSA") with essentially every State, including the Arizona Department of Insurance on June 11, 2013 (the RSA is attached as Exhibit "A" to this Complaint).  Plaintiff reminded LINA of this agreement and its claim responsibilities by submitting a copy of the agreement to LINA during the administrative review of her long-term disability claim.

26.     The RSA resulted from a multistate examination of LINA's disability claims practices which led to regulatory concerns, a corrective action plan with regulatory monitoring of LINA by governmental agencies in LINA's evaluation of its disability claims, which includes similarly situated insureds such as the Plaintiff.

27.     As part of the RSA, LINA agreed to pay $925,000 in fines to the participating state regulatory agencies.

28.     As part of the RSA, LINA agreed to collectively pay 5 different states' regulatory agencies hundreds of thousands of dollars for claims monitoring.

29.     The terms of the RSA apply to Plaintiff's claim and the terms of the RSA are relevant in this action as it relates to whether LINA complied with those terms in its review of her claim.

30.     Plaintiff alleges that LINA's review of her long-term disability claim failed to fully comply with the terms of the RSA which precluded a full and fair review.

Plaintiff is entitled to discovery with regard to LINA's efforts to comply with the terms of the RSA during its review and decision making in disability claims.

31.   As part of its review of Plaintiff's claim for long-term disability benefits, LINA obtained two (2) medical records only "paper reviews" of Plaintiff's claim from two physicians of its choosing.   LINA did not disclose to Plaintiff, either during the administrative review of her claim or following its February 7, 2017 denial of her claim, the names or reports authored by the physicians who reviewed her claim.

32.   Upon information and belief, Plaintiff alleges the reviewing physicians may be long time medical consultants for LINA and/or the disability insurance industry.  As a result, Plaintiff alleges the reviewing physicians may have incentives to protect their own consulting relationships with LINA and/or the disability insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to disability insurance companies and that are relied upon to deny claims.

33.   In letters dated October 7, 2016, December 14, 2016 and January 11, 2017, in order to engage LINA in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from LINA and the opportunity for her and her treating physicians to respond to the reviews prior to LINA rendering a decision in her claim.

34.   Prior to rendering its February 7, 2017 denial in Plaintiff's claim, LINA unlawfully refused to honor Plaintiff's request and never shared with her, or her treating medical professionals who opined she was disabled, the medical records only "paper reviews" authored by the physicians who reviewed her claim so they could respond to the reports and perfect Plaintiff's claim.

35.   LINA's failure to provide Plaintiff and her treating medical professionals with the opportunity to respond to the reviewing physicians' reports is an ERISA procedural

violation, and it precluded LINA from conducting a full and fair review pursuant to ERISA.

LINA's actions also violated Ninth Circuit case law as the Court held in *Salomaa v. Honda*

*Long Term Disability Plan,* 642 F.3d 666, 680 (9th Cir. 2011):

> "The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, *another for the final denial.* They both wrote their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer.  The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' *A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement*" (emphasis added).

36.    In a letter dated February 7, 2017, notwithstanding Plaintiff's aforementioned evidence which proved she met any definition of disability in the Policy, LINA notified her it had denied her claim for long-term disability benefits.

37.    In its denial letter dated February 7, 2017, LINA notified Plaintiff she had exhausted her mandatory administrative levels of review and that she could file a civil action lawsuit in federal court pursuant to ERISA.

38.    LINA's February 7, 2017 denial letter is clear evidence that it violated the terms of the RSA, breached its fiduciary duty and failed to provide a full and fair review, while in the process of also committing ERISA procedural violations that were specifically enacted to protect individuals such as the Plaintiff.

39.    LINA's ERISA violations include but are not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met the definition of disability in the Policy, and failing to provide its medical reviewers' reports prior to issuing its February 7, 2017 denial and during a time when it mattered.

40.     In evaluating Plaintiff's claim on appeal, LINA owed her a fiduciary duty and it had an obligation pursuant to ERISA to administer it, "solely in [her] best interests and other participants" which it failed to do. [1]

41.     LINA failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal in order to prove that she is disabled as that term is defined in the Policy.  LINA's failure to investigate the claim and to engage in this dialogue, and to ask for and/or obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim is an ERISA procedural violation, it also violates Ninth Circuit case law and is evidence she did not receive a full and fair review.

42.     Plaintiff asserts LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, and the terms of the RSA, by failing to have Plaintiff's claim reviewed by truly independent medical professionals; by failing to credit Plaintiff's reliable evidence; by failing to obtain an Independent Medical Examination when the Policy allowed for one, or a Functional Capacity Evaluation, which raises legitimate questions about the thoroughness and accuracy of its review and denials; by failing to credit Plaintiff's reliable evidence; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or by de-emphasizing medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

failing to consider all of her medical conditions and the work limitations set forth in her medical evidence as well as the impact the combination of these medical conditions and limitations have on her ability to work in any occupation; by failing to engage Plaintiff in a dialogue so she could respond to the reviewing physicians' reports by submitting the necessary evidence to perfect her claim so she could prove that she is "disabled" as that term is defined in the Policy, and by failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

43.     Plaintiff asserts a reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles LINA undertook as the decision maker and the payor of benefits.  LINA's conflict of interest provided it with a financial incentive to deny Plaintiff's claim.

44.     LINA's conflict of interest manifested in that when it denied Plaintiff's claim, it saved a significant amount of money.

45.     Plaintiff is entitled to discovery regarding LINA's aforementioned conflicts of interest.  Plaintiff is also entitled to discovery regarding the conflicts of interest of any third party vendor hired by LINA, who then retained a reviewing medical professional in Plaintiff's claim, and of *any* individual who reviewed her medical evidence or claim.

46.     The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation and/or RSA violation which may have impacted or influenced LINA's decision to deny her claim.

47.     The standard of review for this Court to apply is *de novo* as the LINA Policy does not contain discretionary language.

48.     In denying her claim, Plaintiff alleges LINA failed to provide a full and fair review pursuant to ERISA, and that its denial of her claim is a *de novo* wrong decision.

49.     If the Court concludes the Policy confers discretion and the standard of review is for abuse of discretion, Plaintiff alleges that LINA's decision which resulted from its unlawful ERISA violations as referenced herein, constitutes an abuse of discretion. Plaintiff also alleges that in denying her claim, LINA did not provide a full and fair review as required by law and its violations of ERISA are so flagrant they justify *de novo* review.

50.     As a direct result of LINA's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, Insurance Trust, Foundation, from any other Company Plan and/or the Company as a result of being found disabled.  Plaintiff believes that other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

51.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

52.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order finding that the evidence in Plaintiff's claim is sufficient to prove she met and continues to meet the "Any Occupation" definition of disability set forth in the relevant Plan and/or Policy and that she is entitled to disability benefits, and any other non-disability employee benefits she may be entitled to as a result of that

Order, from the date she was first denied these benefits through the date of judgment with prejudgment interest thereon;

B.     For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as she meets the conditions for the termination of benefits;

C.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.     For such other and further relief as the Court deems just and proper.

DATED this 15th day of August, 2017.


SCOTT E. DAVIS. P.C.

By:     */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff